UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY GOODEN,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 2:14-cv-5378 (KM)<br><br>**OPINION** |

Mary Gooden's application for Social Security disability benefits was denied by the Social Security Administration. Gooden has appealed to this Court. She argues that the ALJ did not properly consider her description of her symptoms, and that substantial evidence did not support the ALJ's findings. Because I find that there was substantial evidence to support the ALJ's decision, I will deny Gooden's appeal.

**Background**[1]

---

[1] Citations to the record will be abbreviated as follows:

"Decision" – Decision of Administrative Law Judge Richard West, dated February 21, 2013, Dkt. No. 6-2.
"ER Record Aug 2010" – The University Hospital, Emergency Department Record dated August 28, 2010, Dkt. No. 6-7, Exh. 10F, 275-76.
"ER Record Feb 2011" – Saint Michael's Medical Center Emergency Record dated February 24, 2011, Dkt. No. 6-7, Exh. 3F, 225-35.
"Fernando Report," – Essex Diagnostic Group, Report of Justin Fernando, MD, Dkt. No. 6-7, Exh. 7F, 262-267.
"Hrg." – Transcript, Hearing before Administrative Law Judge Richard West, dated January 15, 2013, Dkt. No. 6-2, 22-53.
"Mot." – Plaintiff's Memorandum of Law, Dkt. No. 9.
"PT Evaluation" – Physical Therapy Evaluation dated January 18, 2012, Dkt No. 6-7, Exh. 11F, 277-80.

1

Mary Gooden was 58 years old on the alleged disability onset date of April 30, 2009. (Hrg., 6) Gooden alleges that she is unable to work because of several conditions: hypertension, osteoarthritis, and osteoporosis. She experiences pain in her hands, shoulders, knees, hips, and back. Before the alleged disability onset date, Gooden worked cleaning airplanes, assembling paper inserts for advertising, as a security guard, and as a machine operator assembling fingernail clippers. (Hrg., 9-13) After the onset date, she worked for for approximately one year supervising children at a daycare center. (Hrg., 8-9) Gooden applied for disability benefits in April of 2011.

**The ALJ's decision**

To determine whether Feeley met the criteria to be considered disabled, the ALJ followed the familiar five-step process outlined at 20 C.F.R. 404.1520(a). Under that framework, an ALJ first asks whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). At Step 2, an ALJ asks whether the claimant has a medically determinable impairment, or a combination of impairments, that is "severe." 20 C.F.R. § 404.1520(c). At Step 3, the ALJ asks whether the claimant's impairments are so severe as to meet or medically equal the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d). The ALJ will then assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). In layman's terms, this means that the ALJ will determine what is the most the claimant can do despite the limitations that have been established. 20 C.F.R. § 404.1545(a)(1). At Step 4, the ALJ determines whether, given that RFC, the claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, at Step 5 the ALJ will determine whether the claimant can perform another kind of work that exists in the national economy. 20 C.F.R. § 404.1520 (a)(4)(v).

Essentially the ALJ determined that although Gooden had three severe impairments, she retained the residual functional capacity to perform light work, and to return to her previous job as a security guard. (Decision, 4-6)

2

At Step 1, the ALJ determined that Gooden had not engaged in substantial gainful activity since the alleged disability onset date. (Decision, 3) The ALJ noted that Gooden had worked at a day care center during the alleged disability period. This work, however, did not rise to the level of substantial gainful activity. (Decision, 3)

At Step 2, the ALJ determined that Gooden had three severe impairments: osteoarthritis, osteoporosis, and hypertension. (Decision, 3-4) He found that Gooden's shoulder issues did not qualify as a severe impairment. (Decision, 4)

At Step 3, the ALJ found that Gooden's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ then assessed Gooden's residual functional capacity. He found that Gooden could perform "light work." Light work, as defined in the regulations, involves infrequent carrying of heavy objects or frequent carrying of lighter objects, and may require a "good deal" of walking or standing. (Decision, 4, citing 20 C.F.R. § 404.1567(b)).

At Step 4, the ALJ determined that based on her residual functional capacity, Gooden could return to her previous job as a "desk security guard." (Decision, 6) That job involved signing delivery trucks in and out of a facility. (Hrg., 12) Because the ALJ determined that Gooden could return to her previous work, the ALJ did not proceed to Step 5.

**Discussion**

I find that the ALJ's decision was supported by substantial evidence. For each category of impairment that Gooden claimed, there is evidence in the record indicating that the impairment is not sufficiently severe to warrant a finding of disability.

**Hips, Arms, Hands, Knees, Shoulder**

The ALJ found that Gooden's feelings of weakness and pain in her hands, arms, hips, knees, and shoulder did not rise to the level of severity required to qualify for disability benefits. He likewise found that these conditions left Gooden with the residual functional capacity to perform light work. I find that those decisions were supported by substantial evidence.

The regulations that define disability explain what conditions a claimant must establish to qualify for benefits. The regulations address a "major dysfunction of a joint" such as a "hip, knee, or ankle" or "shoulder, elbow, or wrist-hand" at 20 CFR Part 404, Subpart P, Appendix 1 § 1.02. For all of these impairments, the dysfunction must be "[c]haracterized by gross anatomical deformity" and "chronic joint pain and stiffness." *Id.* There must be "signs of limitation of motion or other abnormal motion of the affected joints" and findings of "joint space narrowing, bony destruction, or ankyloses of the affected joint." *Id.* There is no evidence in the record that Gooden's impairments rise to this level.

*Shoulder, Wrist/Hand, Arms*

If the impairment involves the shoulder, elbow, or wrist/hand, it must result in an "inability to perform fine and gross movements effectively." 20 CFR Part 404, Subpart P, Appendix 1 § 1.02(A). This means that the claimant has experienced an "extreme loss of function of both upper extremities," resulting in an "inability to independently initiate, sustain, or complete activities." 20 CFR Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(c) Examples of an inability to perform fine and gross movements include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet or above waist level." *Id.*

Gooden was indeed diagnosed with "early osteoarthritic changes in the fingers of both hands." (Fernando Report, 2) And Gooden was instructed to

wear a shoulder immobilizer in December of 2012, though it is not clear for how long she used the device. (Dkt. No. 6-7, Exh. 9F, 2) But "Laboratory evidence showed only mild degenerative changes of the right hand." (Decision, 5) Dr. Fernando, a state agency physician, reported in 2011 that her hand and finger dexterity was "5/5," that her pinch strength was also "5/5." He also reported that the "[s]houlders, elbows, forearms, wrists, and fingers all show[ed] full range of motion." (Fernando Report, 2) In the hands, Dr. Fernando found "no evidence of any muscle atrophy or sensory abnormality." *Id.* At an occupational therapy inpatient evaluation in 2012, Gooden reported that although she did so slowly, she could fasten buttons, snaps, zippers, and laces, and could open jars. (PT Evaluation, 1, 3) And at her hearing before the ALJ, Gooden testified that although most of the time one of her children cooks for her, she is able to prepare a simple meal, such as a sandwich. (Hrg., 25-26) There is, then, no evidence of the kind of inability to perform daily activities that is required for a finding of disability. I therefore find that the ALJ's conclusions with respect to these impairments were supported by substantial evidence.

*Hip, Knee*

If the claimant's impairment comes from the hip or knee it must result in an "inability to ambulate effectively." 20 CFR Part 404, Subpart P, Appendix 1 § 1.02(A) To ambulate effectively, the claimant must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 CFR Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b) Ineffective ambulation includes characteristics like the

> inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.*

Dr. Fernando diagnosed Gooden with possible osteoarthritis in the knee, though he surmised that Gooden's knee issues were more likely explained by a meniscus tear. (Fernando Report, 2) Nonetheless, there is substantial evidence to support the ALJ's conclusion that Gooden's impairments, alone or in combination, did not rise to the level of severity the regulations require. To begin with, it appears that Gooden could ambulate effectively. A 2011 report from Dr. Fernando reported that Gooden's gait was normal, and that she did not use an assistive device. *Id.* Indeed, Dr. Fernando reported that Gooden could walk at a reasonable pace. (Fernando report, 6) At her hearing before the ALJ, Gooden indicated that she can walk about two blocks before she needs to stop to rest. (Hrg., 22) Gooden did report having fallen because her knee "gave out" (*Id.*), but she also reported using only one cane, rather than the two that the regulations suggest indicate an inability to ambulate. *See* 20 CFR Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b).

Second, Gooden's range of motion in her hips and knees appeared normal. Dr. Fernando found that the hips, knees, and ankles all showed full range of motion. (Fernando Report, 2) Emergency room records from 2010 indicate a full range of motion in the lower extremities. (ER Record Aug 2010, 2) At a physical therapy evaluation in 2012, Gooden was observed to have right knee flexion strength of 3+/5, right hip strength at 4/5, and full strength with all other extremities. (PT Evaluation, 1) I therefore find that the ALJ was supported by substantial evidence in concluding that Gooden's hip and knee problems did not rise to the level of severity required for a finding of disability.

**Other impairments**

*Back*

The regulations address disorders of the spine at 20 CFR Part 404, Subpart P, Appendix 1 § 1.04. To render a person disabled, the disorder must result in compromise of a nerve root or the spinal cord with either: (1) evidence

6

of nerve root compression, limitation of motion of the spine, motor loss accompanied by sensory reflex loss, and (for the lower back) positive straight-leg raising test; (2) spinal arachnoiditis, confirmed by appropriate medical evidence; or (3) lumbar spinal stenosis, manifesting in chronic pain and weakness, and resulting in an inability to ambulate effectively. 20 CFR Part 404, Subpart P, Appendix 1 § 1.04(A)-(C).

Gooden reported experiencing pain in her lower back. The ALJ had substantial evidence, though, that Gooden's back problems did not rise to the level of disability.

Dr. Fernando did indeed diagnose Gooden as having pain in her lower back. (Fernando Report, 2) Dr. Fernando noted that Gooden's back pain could be cause by arthritic changes in the back, but he noted that there was "no distinct evidence of any degenerative disk disease or disk herniation in the back or in the cervical spine." *Id.* at 3.

Examinations of Gooden's back indicate that it retained sufficient range of motion. Records from a visit to Saint Michael's Medical Center in February 2011 indicate that Gooden's back was normal. (ER Record Feb 2011, 3) The records also indicate that Gooden's upper extremities and lower extremities were normal. *Id.* At a physical therapy evaluation in 2012, Gooden was observed to have "functional range of motion of the spine," with soreness and pulling, and some spinal tenderness. Dr. Fernando reported in 2011 that Gooden's cervical spine and lumbar spine both showed full range of motion. (Fernando Report, 2) He noted only "some tenderness" at the "very end of the lumbosacral spine. And tenderness over the right sacroiliac joint." *Id.* Further, as discussed *supra*, the record does not support a finding that Gooden was unable to ambulate effectively.

I therefore find that the ALJ's determination that Gooden's back problems did not render her disabled was supported by substantial evidence.

*Pain*

With respect to all of Gooden's physical disorders, she argues that the ALJ did not properly take into account her descriptions of the pain her conditions cause her. (Mot., 12) It is difficult, of course, for anyone other than the person experiencing pain to gauge its severity. Nonetheless, the regulations call upon the Social Security Administration to do so, and they enumerate relevant considerations. To find that pain or other symptoms affect an individual's ability to work, "medical signs or laboratory findings must show the existence of a medically determinable impairment(s) that could reasonably be expected to produce the pain or other symptoms." 20 CFR Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(d) A claimant's statements about the pain she experiences do not compel a finding of disability; "there must be medical signs and laboratory findings which show that [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a) I find that the medical evidence cited above provided a sufficient basis for the ALJ to conclude that the pain Gooden experienced did not rise to the level of rendering her unable to work.

*Hypertension*

Gooden was also diagnosed with hypertension. The regulations explain that when hypertension causes disability, it generally does so by affecting other body systems. 20 CFR Part 404, Subpart P, Appendix 1 § 4.00(H)(1). For example, high blood pressure can have a disabling impact on the heart, brain, kidneys, or eyes. *Id.* Gooden does not point to any evidence that her hypertension has had a severe impact on another body system. Nor has any doctor characterized her hypertension as severe. I therefore find that the ALJ's conclusion that Gooden's hypertension was consistent with an ability to perform light work was supported by substantial evidence.

*Shortness of breath/ Mental impairments*

Before this Court, Gooden argues that the ALJ did not give sufficient weight to her own reports of certain symptoms and limitations. (Mot., 7-11) For instance, Gooden argues that the ALJ did not consider her complaints of pain, limitation of motion and function, shortness of breath, and mental impairments including panic attacks, paranoia, and insomnia. *Id.* at 8.

With respect to shortness of breath or panic attacks, the only medical evidence of such a condition Gooden submitted was a letter from a doctor addressed "To Whom it May Concern." The letter diagnosed Gooden as having "difficulty breathing" and "Panic attacks." (Dkt. No. 6-7, Exh. 4F, 2) The letter goes on to recommend that Gooden be "replaced on a lower level floor or a lower level home." *Id.* The regulations provide that evidence of respiratory disorders "must be provided in sufficient detail to permit an independent reviewer to evaluate the severity of the impairment." 20 CFR Part 404, Subpart P, Appendix 1 § 3.00(A) The one-paragraph physician's letter that Gooden has provided does not provide such detail. Counsel's characterization of Gooden's condition as "shortness of breath" likewise does not provide enough detail to justify a finding of disability.

To the extent that Gooden is claiming a mental disorder and related physical manifestations (such as panic attacks, paranoia, and insomnia) there is likewise insufficient evidence to warrant a finding of disability. In support, Gooden offers the same one-paragraph physician's letter. (Dkt. No. 6-7, Exh. 4F, 2) Gooden also testified at her hearing before the ALJ that she suffers from claustrophobia. Her condition, she explained, makes her fearful when she is in small spaces like elevators, or when she is in close proximity to groups of people. (Hrg., 18-19) The regulations, though, require a greater degree of disruption for a mental disorder to result in a finding of disability.

The regulations do recognize that paranoia can render a person unable to work. 20 CFR Part 404, Subpart P, Appendix 1 § 12.03. For instance, a medically documented history of schizophrenia or other psychotic disorder of at

9

least two years' duration will result in a finding of disability. 20 CFR Part 404, Subpart P, Appendix 1 § 12.03(C). Failing that, for paranoia to rise to the level of disability the claimant must suffer from one or more of the following: persistent hallucinations, catatonic or other grossly disorganized behavior, incoherence (resulting in blunt, flat, or inappropriate affect), or emotional withdrawal and/or isolation. *Id.* at § 12.03(A). In addition, the claimant's condition must cause at least two of the following: marked restriction in activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. *Id.* at § 12.03(C) Gooden has not testified or provided medical evidence suggesting that her paranoia has risen to this level.

The regulations also recognize that a claimant can be rendered unable to work by an anxiety disorder. 20 CFR Part 404, Subpart P, Appendix 1 § 12.06. But again Gooden has not alleged symptoms that would meet the regulatory criteria for a finding of disability. The regulations require medically documented findings of at least one of the following: Generalized persistent anxiety (characterized by motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning), persistent irrational fear of a particular situation resulting in a compelling desire to avoid the dreaded situation, "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week," recurrent obsessions or compulsions, or recurrent intrusive recollections of a traumatic experience. Gooden has not even alleged that her symptoms approach that level of severity.

*Past relevant work*

Gooden points to a state agency physician's statement that Gooden had no past relevant work. However, in considering Gooden's residual functional capacity, the ALJ found that she could perform past relevant work as a security guard. (Mot., 12-13)

The state agency physician's statement is not an expert diagnosis; it seems to be more than an errant statement. The statement appears immediately after that physician's listing of four prior jobs (as a daycare employee, custodian, security guard, and factory worker). (Dkt. No. 6-3, Exh. 6A, 5) In any case, I find the residual functional capacity finding to be supported by other substantial medical and factual evidence in the record, as discussed above. I therefore do not agree that this discrepancy is a basis for remand.

**Conclusion**

Gooden's appeal will be denied. A separate order will issue.

August 6, 2015
Newark, New Jersey

                                      Kevin McNulty
                              United States District Judge